# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HERRERA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:12-cv-01835-EGS |
| | ) | |
| THE UNITED SATES DEPARTMENT | ) | |
| OF VETERANS AFFAIRS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION AND IN <u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

Dated: November 19, 2012

Respectfully submitted,

/s/ Robert J. Symon
Robert J. Symon (Bar No. 436245)
Eric A. Frechtel (Bar No. 476967)
Bradley Arant Boult Cummings LLP
1615 L Street, N.W., Suite 1350
Washington, DC 20036
P: 202.719.8294
F: 202.719.8394
rsymon@babc.com
efrechtel@babc.com

Edward T. DeLisle (admitted *pro hac vice*)
Maria L. Panichelli (admitted *pro hac vice*)
Cohen Seglias Pallas Greenhall & Furman PC
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA 10103
P: 215.564.1700
edelisle@cohenseglias.com
mpanichelli@cohenseglias.com

*Attorneys for Plaintiff*
*Herrera Corporation*

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

I.   INTRODUCTION ....................................................................................................1

II.  COUNTER-STATEMENT OF FACTS ....................................................................3

III. ARGUMENT ............................................................................................................4

    A. This Court Has Jurisdiction Over This Matter ....................................................4

        1. Because Herrera's Claims Are Not Based on The VA's Violation Of A Law " In Connection With" A Procurement, 28 U.S.C. 1491(b)(1) Does Not Require The Court Of Federal Claims ..................................................................4

        2. Sovereign Immunity Does Not Apply To Bar This Action .................................16

        3. Plaintiff Has Established A Protectable Due Process Right ...............................17

    B. Herrera Has Established The Requisite Elements For Injunctive Relief ................18

        1. Herrera Has Established A Likelihood Of Success On The Merits Of Its Complaint ........................................................................................................19

        2. Herrera Has Established That It Will Suffer Irreparable Harm If Injunctive Relief Is Not Issued .........................................................................................21

        3. Herrera Has Established That The Balance Of Equities Tips In Its Favor .........22

V.  CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Angelica Textile Services, Inc. v. U.S.,
    95 Fed.Cl. 208, 215 (2010) ................................................................................................15

ATL, Inc. v. United States,
    735 F.2d 1343 (Fed. Cir. 1984)........................................................................11, 13, 14, 15

Barton v. District of Colombia,
    131 F.Supp.2d 236, 242 (D.D.C. 2001) ............................................................................19

Benton v. Kessler,
    505 U.S. 1084, 1085 (1992)..............................................................................................19

Board of Regents of State Colleges v. Roth,
    408 U.S. 564, 576, (1972)............................................................................................. 17-18

Bona Fide Conglomerate, Inc. v. U.S.
    96 Fed.Cl. 233, 240-41 (Fed.Cl. 2010) ............................................................................15

Bublitz v. Brownlee,
    309 F.Supp.2d 1, 6 (D.D.C. 2004) ....................................................................................16

C&E Services, Inc. of Washington v. District of Columbia Water and Sewer,
    310 F.3d 197, 200 (D. C. Cir. 2002) ...........................................................................17, 18

Chaplaincy of Full Gospel Churches v. England,
    454 F.3d 290, 297 (D.D.C. 2006) ......................................................................................19

CS-360, LLC v. United States,
    94 Fed. Cl. 488, 500 (2010) ..................................................................................... *passim*

CS-360, LLC v. U.S. Dept. of Veteran Affairs,
    846 F.Supp.2d 171 (D.D.C. 2012) ....................................................................................14

Davenport v. Int'l Board of Teamsters,
    166 F.3d 356, 366 (D.C. Cir. 1999) ..................................................................................19

Emily's List v. Federal Election Commission,
    362 F. Supp. 2d 43, 51-52 (D.D.C. 2005).........................................................................19

FMC Corp. v. United States,
    3 F.3d 424, 427 (Fed.Cir.1993)..........................................................................................19

Jordan v. United Insurance Company of America,
  89 F.2d 778 (D.C. Cir. 1961) ...............................................................................................17

Labat-Anderson, Inc. v. U.S.,
  346 F.Supp.2d 145 (D.D.C. 2004) ..........................................................................8, 9, 10, 14

RAMCOR Services Group, Inc. v. U.S.,
  85 F.3d 1286, 1291 (Fed. Cir. 1999) ................................................................................. *passim*

Resource Conservation Group, LLC v. U.S.,
  597 F.3d 1238, 1245 (Fed. Cir 2010) ("1491(b)(1) ........................................................ 16-17

TD Bank, N.A. v. Pearl,
  CIV.A. 12-01315 CKK, 2012 WL 4101946 (D.D.C. Sept. 19, 2012) .....................................19

Washington Metropolitan Area Transit Authority v. Holiday Inn,
  559 F.2d 841 (D.C. Cir. 1972) ...............................................................................................19

Wisconsin Gas Co. v. F.E.R.C.,
  758 F.2d 669, 674 (D.C. Cir 1985) .........................................................................................21

**STATUTES**

10 U.S.C. § 2462 ...............................................................................................................................9

28 U.S.C. § 1331 .............................................................................................................................18

28 U.S.C. § 1491(b)(1) ........................................................................................................4, 5, 6, 15

31 U.S.C. § 3553(c)(2) ...............................................................................................................6, 7, 8

32 C.F.R. §§ 169.4, 169a.10 ............................................................................................................9

38 U.S.C. §§ 8127(e) ......................................................................................................................13

**OTHER AUTHORITIES**

38 C.F.R. § 74 .......................................................................................................................... passim

38 C.F.R. § 74.4 ..............................................................................................................................12

38 C.F.R. § 74.22 .......................................................................................................................24-25

48 C.F.R. § 804.1102 .......................................................................................................................13

#1869179-v1 51817-0001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HERRERA CORPORATION,      )
                              )
     Plaintiff,           )
                              )
     v.                  )     C.A. No. 1:12-cv-01835-EGS
                              )
THE UNITED SATES DEPARTMENT  )
OF VETERANS AFFAIRS        )
                              )
     Defendant.        )
_____)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Herrera Corporation ("Herrera" or "the Company"), by and through its undersigned attorneys, respectfully submits this memorandum of points and authorities in further support of its Motion for Temporary Restraining Order, its Motion for Preliminary Injunction, and its Complaint for Temporary Restraining Order, Permanent Injunction and Declaratory Judgment, and in opposition to Defendant's Motion to Dismiss:

## I.    INTRODUCTION

Defendant's primary argument, as set forth in Defendant's Memorandum of Points and Authorities in Opposition to Herrera's Complaint, Motion for Temporary Restraining Order and Motion for Preliminary Injunction ("Defendant's Brief" or "Def. Br."), is that this Court lacks jurisdiction to adjudicate the claims in Herrera's complaint ("Complaint"). This argument is premised on a mischaracterization of the conduct upon which Herrera's claims are based. Defendant incorrectly argues that the misconduct at issue was the violation of a law "in connection" with a procurement or the procurement

1

process. Contrary to Defendant's claims, the misconduct at the heart of this case is not related to a procurement or the procurement process. Rather, as set forth in detail in the Opening Brief, the gravamen of this case is the Department of Veterans Affairs' ("VA") improper refusal to automatically extend Herrera's Service-Disabled Veteran-Owned ("SDVOSB") eligibility in accordance with 38 C.F.R. 74, as amended in June 2012. Though the misconduct concerning the Company's verification undoubtedly impacted the VA's decision concerning the two procurement contracts at issue in this case ("the Contracts"), the statute itself, and any violation thereof, relates only the eligibility of Herrera. Thus, the law that the VA violated is not "in connection" with a procurement, or the procurement process. It is, therefore, this Court, and not the Court of Federal Claims, that has jurisdiction of this matter.

Contrary to the arguments set forth in Defendant's Brief, Herrera has established all four of the requisite elements necessary for injunctive relief. Herrera has established that the VA acted in an arbitrary and capricious manner, and in contravention of established law, to negatively impact Herrera's rights. Defendant has not disputed the factual allegations supporting Herrera's claims. Herrera is therefore exceedingly likely to succeed on the merits of its Complaint. Herrera has further shown that, absent the issuance of injunctive relief, it would be irreparably harmed. As discussed at length in the Company's Opening Brief and its Supplemental Brief in support of its Motion for Temporary Restraining Order and for Preliminary Injunction ("Supplemental Brief"), if Herrera's request for injunctive relief is not granted, its very existence will be threatened. Defendant has failed to establish any competing interest, or otherwise establish that the balance of equities tips in favor of denying the injunctive relief sought.

## II.    COUNTER-STATEMENT OF FACTS

Herrera's statement of facts is set forth in its Opening Brief, which, for the sake of brevity, is incorporated herein by reference.

Notably, nowhere in Defendant's Brief does the government dispute the facts, as set forth in the Opening Brief, which form the basis of Herrera's claims. Indeed, the Defendant does not refute that the VA made critical errors in relation to Herrera Corporation and Herrera Engineering's "profile" pages. (See Def. Br., pp. 4-6). The Defendant similarly does not dispute that these errors led the VA to incorrectly identify the Company's verification date, or argue that this error caused the VA to incorrectly calculate the date to which Herrera's verification should have been extended pursuant to 38 C.F.R. 74. (See Def. Br., pp. 4-6). Lastly, the Defendant does not refute Herrera's claim that it was *this* error, and resulting miscalculation, that resulted in Herrera being excluded from the VetBiz database, or that, if not for this error, Herrera would have been verified as a SDVOSB entity at the time the two contracts at issue in this case (the Contracts") were awarded. Rather, the Defendant's Brief focuses on alleged errors made by Herrera with regard to its June 2012 re-verification submission.

However, Defendant fails to explain why any such alleged mistakes made on behalf of Herrera with respect to the June 2012 re-verification submission are relevant. As explained in Herrera's Opening Brief, any errors in Herrera's re-verification submission should have proved inapposite, as that package should not have been reviewed by the VA at all; the VA should have, pursuant to 38 C.F.R. 74, *automatically* extended Herrera's verification status to December 27, 2012 when Herrera first requested it do so in July of 2012. Importantly, the Defendant has not disputed, and indeed cannot

dispute, that the VA engaged in such misconduct in violation of 38 C.F.R. part 74.  It is

this misconduct that forms the crux of this case.

### III.   ARGUMENT

#### A.   This Court Has Jurisdiction Over this Matter

1.   Because Herrera's Claims Are Not Based on the VA's Violation of a Law "in Connection With" a Procurement, 28 U.S.C. § 1491(b)(1) Does Not Require That The Court of Federal Claims Adjudicate this Case

Defendant's opposition to Herrera's case is primarily based on the proposition

that this Court lacks jurisdiction over the claims in the Complaint, and the case should be

transferred to Court of Federal Claims.  (See Def. Br. pp. 12-15; 20-27).  As such,

Defendant's entire case is flawed, as it is clearly this Court, and not the Court of Federal

Claims, that has jurisdiction over the claims set forth in the Complaint.

In comparison to those Federal courts established pursuant to Congress's authority

under Article Three of the United States Constitution, the Court of Federal Claims

(established pursuant to Article One of the Constitution), has very limited jurisdiction,

and is empowered through statute to hear cases brought against the United States only in

very specific circumstances.  One such statute, 28 USC § 1491, statutorily confers

exclusive jurisdiction of all procurement-related claims to the Court of Federal Claims.  It

provides, in relevant part:

> (b) (1) Both the Unites  States Court of Federal Claims and the district courts of the United States[1] shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by

---

[1] As the Defendant's Brief recognized, the concurrent jurisdiction of the United States District Courts was later abolished.  Following January 1, 2001, the District Courts no longer have any such jurisdiction, and the Court of Federal Claims has exclusive jurisdiction over the types of claims described in 28 U.S.C. § 1491(b)(1).  (See Def. Br. p. 15).

a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any **alleged violation of statute or regulation in connection with a procurement or a proposed procurement**. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded. (Emphasis Added).

Defendant misunderstands the crux of Herrera's case, incorrectly asserting that "by Plaintiff's own description, it is challenging [the] [*sic*] VA's procurement process and the regulations governing that process." (Def. Br., p. 25). Based on this faulty perception, Defendant mischaracterizes the instant case as one alleging a "violation of statute or regulation in connection with a procurement or proposed procurement" within the meaning of 28 U.S.C. 1491(b)(1). (Def. Br., pp. 25-27). Defendant therefore argues that the Court of Federal claims has exclusive jurisdiction over this case pursuant to 28 U.S.C. § 1491(b)(1). However, contrary to Defendants position, Herrera is <u>not</u> arguing that the VA committed error *as part of the procurement process*.

The allegations that form the basis of the Complaint do not concern alleged wrongdoing by the Contracting Officer, or the agency in general, in reviewing the Company's proposals, in finding that the Company *appeared* to be ineligible for the Contracts, or in finding, based on that inaccurate appearance, that the Contracts could not be awarded to Herrera.[2]   Rather, Plaintiff alleges that the VA, on or about July 2, 2012, as a result of its own factual error, arbitrarily and capriciously, and in contravention of law, improperly refused to extend Herrera's verification to December 27, 2012.

---

[2] Indeed, the government itself argued (in its motion to dismiss an initial Protest concerning on of the Contracts at issue in this case, originally brought before the Government Accountability Office ("GAO") B-407632.2) that, based on the state of the Company Profile, the Contracting Officer was entirely justified in finding Herrera ineligible for the award of the Contracts. The Government argued that the error, if any, perpetrated by the VA occurred *prior to procurement* and affected said procurement only indirectly. (<u>See</u> Motion to Dismiss, B-407632.2, attached hereto as Exhibit A).

Although this error ultimately *impacted* Herrera's ability to be awarded the Contracts, that does not render the error at issue "part of the procurement process." Herrera's case is centered around the VA's violation of a regulation pertaining to *eligibility*, as opposed to a violation of the regulations concerning *procurement itself*. It is the latter type of claims that requires adjudication by the Court of Federal Claims. The instant case does not, and this Court may therefore exercise jurisdiction over Herrera's claims.

The fact that Plaintiff seeks injunctive relief that involves a stay of certain procurements is inapposite. The Court of Federal Claims' jurisdiction is does not hinge on the type of relief sought by a plaintiff, but rather to the gravamen of the plaintiff's case. 28 U.S.C. § 1491(b)(1). The gravamen of the instant case is the VA's improper refusal to extend Herrera's SDVOSB verification and inclusion in the VetBiz database. This does not fall within the ambit of the Court of Federal Claims' jurisdiction pursuant to 28 U.S.C. 1491(b)(1). The cases cited by the Defendant do not establish otherwise.

In RAMCOR Services Group, Inc. v. U.S., 185 F.3d 1286 (Fed. Cir. 1999), the Federal Circuit Court determined only that the Court of Federal Claims had jurisdiction to entertain an action based on an objection to a violation of 31 U.S.C. § 3553(c)(2). There, the Plaintiff had filed a pre-award bid protest with the GAO in connection with an Immigration and Naturalization Service (INS) procurement. The protest triggered an automatic stay under the provisions of the Competition in Contracting Act ("CICA"). Id. at 1287. CICA allows an agency to override such automatic stay if it issues a written finding that "urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting" for the bid protest decision. Id. (citing 31 U.S.C. § 3553(c)(2)). In accordance with this statute, INS issued a written

"Determination and Finding" setting forth purported urgent and compelling circumstances, and thereby overrode the stay. Id. INS then awarded the contract at issue to a bidder other than the Plaintiff, namely OMNI–CUBE. Id. Citing deficiencies in the written findings, the plaintiff argued that INS had violated 31 U.S.C. § 3553(c)(2). Plaintiff therefore sought a preliminary injunction in the Court of Federal Claims to prohibit INS from allowing OMNI–CUBE to act under the newly awarded contract. Id. The government argued that the Court of Federal Claims had no jurisdiction. Id.

The Federal Circuit found that the Court of Federal Claims had jurisdiction over the plaintiff's claim for injunctive relief because the override of the stay was "*in connection" with a procurement.* Id. at 1289 (emphasis added). That court reasoned that the basis of the complaint was the alleged violation of a statute – namely 31 U.S.C. § 3553(c)(2) – and, further, found that "[a]s long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." Id.

Defendant argues that RAMCOR is dispositive of the jurisdictional issues in this case. However, RAMCOR involved a completely different type of "violation." There, the supposed "violation" upon which the plaintiff's claim was based was a violation of a statue which addressed overriding a stay of a procurement during a bid protest. See id; 31 U.S.C. § 3553(c)(2). 31 U.S.C. § 3553(c)(2) provides, in relevant part:

> (c) (1) Except as provided in paragraph (2) of this subsection, a contract may not be awarded in any procurement after the Federal agency has received notice of a protest with respect to such procurement from the Comptroller General and while the protest is pending.
>
> (2) The head of the procuring activity responsible for award of a contract may authorize the award of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

(A) upon a written finding that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General under this subchapter; and

(B) after the Comptroller General is advised of that finding.

31 U.S.C. § 3553(c)(2). The language of the statute itself therefore makes clear that it involves bid protests, procurement, and the award of contracts in relation to both. Indeed, given the clear language of the statue, any violation of such statute could properly be found to be "in connection" with a procurement at issue. In contrast, in this case, the law that the VA violated in this case – namely 38 C.F.R. Part 74, as updated on June 22, 2012 – does not concern procurements, or the procurement process. Rather, it governs the ability of certain entities to be verified as SDVOSB concerns, and the resulting eligibility of those entities with regard to SDVOSB set-aside contracts. While the (improper) implementation, or violation, of that regulation may indirectly impact whether a certain business concern is eligible for the award of a SDVOSB set-aside procurement, the regulation itself does not concern procurements or the procurement process. Accordingly, 38 C.F.R. Part 74 is not analogous to 31 U.S.C. § 3553(c)(2), and RAMCOR is readily distinguishable from the instant case.

Labat-Anderson, Inc. v. U.S., 346 F.Supp.2d 145 (D.D.C. 2004) is equally inapposite. There, this Court addressed its jurisdiction over a complaint and motion for preliminary injunction, which sought an order preventing the government from terminating its contract with the plaintiff in favor of converting distribution services to in-house personnel, and ultimately executing a new contract. Id. The plaintiff, Labat–Anderson, Inc., was a government contractor that provided distribution services at a

supply depot operated by defendant Department of Defense ("DOD"). Id. at 145-46. At some point, the DOD announced that it was not going to exercise the option on plaintiff's existing contract, and was instead going to convert the distribution services to in-house personnel on a temporary basis, and ultimately, award a new contract. Id. In response, plaintiff filed an application for a temporary restraining order / preliminary injunction, seeking an order that prevented the DOD from converting to in-house personnel without first performing the cost comparison and full solicitation of bids, which, plaintiff claimed, was required under the governing statutes and regulations. Specifically, plaintiff argued that the DOD, in failing to perform the cost comparison, had acted in contravention of several sources of applicable law, *inter alia*, 10 U.S.C. § 2462, Department of Defense regulations 32 C.F.R. §§ 169.4, 169a.10, and an executive order (Executive Order 12615). Id. at 148. The government moved to dismiss for lack of subject matter jurisdiction, arguing that the court had no authority to hear plaintiff's claims. Id. at 145-46.

The court reasoned that the very conduct that the plaintiff was challenging was the decision by the government to terminate its existing contract with the plaintiff (itself the result of a former procurement) in favor of another temporary contract (arguably, a "procurement"), and ultimately, a third, permanent contract (another "procurement"). Id. at 153-54. The court therefore concluded that "it [was] fair to say that this dispute [sat] among a series of procurements and proposed procurements." Id. Indeed, the very statutes and regulations that plaintiff alleged the government had violated were previously described by the D.C. Circuit as "federal procurement law." Id. In Labat-Anderson, as in RAMCOR, the laws at issue dealt *directly* with procurement, and the

procurement process.  Id.  Specifically, the laws at issue governed the manner in which

the *procurement itself* was permitted to proceed, and the steps the government had to

fulfill in order to properly cancel an existing contract and begin a new procurement

process.  Id.  The laws at issue in Labat-Anderson differ from the laws at issue here in

ways that are critical to this Court's jurisdictional analysis.  A violation of the laws cited

by the Plaintiff in Labat-Anderson could be accomplished *only as a result of a*

*procurement*; indeed, if the government had not initiated a new procurement, these laws

would not have been applicable at all.  In contrast, the Plaintiff in this case alleges that

the VA acted in violation of 38 C.F.R. Part 74, a regulation concerned with the process

by which the VA determines what business concerns are eligible for SDVOSB set-aside

contracts, and inclusion in the VetBiz database.   While the resultant determination

relating to a concern's eligibility most certainly affects its ability to procure SDVOSB

contracts, a violation of the regulation can occur separate and independently of a

procurement or the procurement process itself.   Indeed, as Plaintiff alleges in its

Complaint and Opening Brief, the VA first violated this regulation no later than July 2,

2012, when it improperly refused to automatically extend Herrera's verification to

December 27, 2012.   This occurred prior to the dates on which Herrera submitted its

responses to the solicitations at issue, and well before the award of the Contracts.

Though the VA's misconduct in violating the eligibility regulations ultimately led to

Herrera being denied the awards of the Contracts, the crux of the VA's violation did not

relate to the procurement itself.   It related instead to its determination of Herrera's

SDVOSB eligibility and inclusion in the VetBiz database.  The VA's flagrant violation of

38 C.F.R. 74 in this case cannot, therefore, be said to be "in connection" with a procurement.

Various cases in the Federal Circuit, which Defendant's Brief did not address, support Herrera's analysis with respect to this Court's jurisdiction. In <u>ATL, Inc. v. United States</u>, 735 F.2d 1343 (Fed. Cir. 1984), the plaintiff had been suspended from receiving Government contracts and the Army Corps of Engineers ("USACE") therefore refused to award the plaintiff certain contracts despite the fact that plaintiff had submitted the lowest bids. <u>Id</u>. at 1344. The issue before the court related to "the Claims Court's jurisdiction . . . whether the case is styled as a 'bid protest' case over which the Claims Court and its predecessor court have long exercised jurisdiction, or whether the case constitutes an Administrative Procedure Challenge to the Government's suspension action, in which event the case belongs in district court." <u>Id</u>. Because USACE could not legally enter into a contract with plaintiff, the Federal Circuit affirmed the finding that the case was not a proper bid protest and the dismissal for lack of jurisdiction. <u>Id</u>. at 1345 ("the Army lacked actual authority to bind the Government to a contract with ATL as long as the suspension was in place"). In short, the court found that the USACE did not err when determining that ATL was ineligible for the contract at issue. Because there was no violation in connection with the procurement itself, the Court of Federal claims could not exercise jurisdiction. <u>See id</u>.

Similarly in <u>CS-360, LLC v. United States</u>, 94 Fed. Cl. 488 (2010), the Court of Federal Claims found that it did not have jurisdiction over a contractor's pre-award bid protest, which sought an injunction ordering reopening of bidding on a VA contract based on the VA's unreasonable delay in restoring contractor to the VetBiz database. <u>Id</u>. This

case is strikingly similar in all relevant respects to the instant case, and is particularly instructive.

In <u>CS-360</u>, the plaintiff, CS-360, LLC ("CS-360") had submitted to the CVE its application for inclusion in the VIP database.  While its application was pending, CS-360 self-certified as an SDVOSB so that it would be listed on the VIP database.  Then, as a result of a protest filed by a competitor on an unrelated SDVOSB set-aside procurement, the VA determined that CS-360 did not qualify as a SDVOSB.  Specifically, the VA Office of Small and Disadvantaged Business Utilization (the "OSDBU") found that the service-disabled veteran owner did not "unconditionally control" the business, as is required under 38 C.F.R. § 74.4, due to certain provisions contained in the company's operating agreement.  CS-360 was therefore disqualified from the protested procurement and was removed from the VIP database.   In response, CS-360 amended its operating agreement in order to overcome the OSDBU's objections.  Following these corrective amendments, the plaintiff repeatedly requested that the CVE reconsider its verification status, deem it an eligible SDVOSB concern, verify its SDVOSB status, and include it in the VetBiz database. Despite CS-360's request for reconsideration, on July 30, 2010, the CVE ruled on CS-360's application for SDVOSB status verification, and denied plaintiff's request to be included in the VetBiz database.  It cited the same control issues previously addressed in the unrelated protest, and later remedied by CS-360.

Meanwhile, on May 17, 2010, the VA had issued a solicitation relating to a SDVOSB set-aside procurement involving the Point Perry VA Medical Hospital.  CS-360 submitted its response to the solicitation on June 17, 2010, and was the lowest bidder.  Despite CS-360' status as the lowest bidder, in a letter dated June 29, 2010, the

contracting officer rejected on CS-360's bid.  Citing 38 U.S.C. § 8127(e) and 48 C.F.R. §

804.1102, the contracting officer explained that because on CS-360 was not listed in the

VetBiz database, it was ineligible for the contract award.

On July 13, 2010, on CS-360 filed its Complaint for Injunctive and Declaratory

Relief, seeking to "temporarily, preliminarily, and permanently enjoin the VA from

denying a contract award to Plaintiff on grounds that the firm is not listed on the [VIP]

database."  The complaint alleged, inter alia, that the VA's failure to re-list on CS-360 in

the VIP database after plaintiff amended its operating agreement was arbitrary,

capricious, and contrary to law.  In response, the government argued that the Court of

Federal Claims lacked subject matter jurisdiction over the case because on CS-360 was

not, in fact, listed in the VetBiz database at the time of the award, and was therefore

*properly* held to be eligible for the award of the contract at issue.  The Court of Federal

Claims agreed, and concluded that it had no jurisdiction to determine the "CVE's

authority to remove a bidder [from the VetBiz database] upon a negative finding by the

[VA]."  CS-360, 94 Fed. Cl. at 500. [3]  The Clerk of the Court dismissed the complaint

---

[3] Indeed, the government itself (albeit by and through counsel, and in a context, unrelated
to the instant case) has cited to ATL and CS-360 to establish the Court of Federal Claim's
lack of jurisdiction over cases involving the propriety of the VA's SDVOSB eligibility
determinations.  *See* Defendant's Motion to Dismiss, D.I. # 31, MILES
CONSTRUCTION, LLC v. USA, Court of Federal Claims 1:12-cv-00597-CFL.  In that
Motion, currently pending before the Court of Federal Claims in an unrelated matter, the
government argued strenuously that the Court of Federal Claims lacked jurisdiction over
conduct that related to a concern's eligibility only.  It claimed that jurisdiction did not
exist under 28 U.S.C. § 1491 (b)(1) because such conduct was not related to, or
perpetrated in connection with, a procurement or the procurement process.  Of course, in
the *Miles* case, the conduct at issue *was*, in fact, procurement-related, rendering the
government's argument inaccurate.  However, the disparity between the government's
arguments in these two cases demonstrates that the government's reasoning in this case is
critically flawed.

without prejudice for lack of subject matter jurisdiction. CS-360 thereafter brought its

suit to this Court. It filed a complaint that, in this Court's words:

> "assert[ed] three claims that, in one way or another, all challenge
> the VA's decision to deny CS360's application to be included in an
> online database of businesses eligible to participate in a veteran-
> owned small business program managed by the VA. Count I of the
> [1] Complaint alleges that the VA violated the Administrative
> Procedure Act because its denial of CS360's application was
> arbitrary and capricious. Count II alleges that the VA violated the
> Due Process Clause of the Fourteenth Amendment of the United
> States Constitution by failing to permit applicants to appeal
> application decisions to an independent decision-maker and by
> using "inflammatory language" in the decision to deny CS360's
> application. Count III alleges that the VA is without statutory
> authority to issue the regulations at issue in this case."

CS-360, LLC v. U.S. Dept. of Veteran Affairs, 846 F.Supp.2d 171 (D.D.C. 2012).

Following the VA's motion to dismiss, the Court addressed the merits of the plaintiff's

claims; the court ultimately found that the VA had failed to provide a sufficient

justification for its actions and remanded the case to the VA for actions consistent with

the court's ruling, therefore demonstrating that it had jurisdiction over the clams made in

the complaint. Id.

The claims at issue, and the alleged violation forming the basis of such claims, in

this case concern an agency's determination of a concern's eligibility for certain

government contracts and are therefore similar to the claims in ATL and CS-360, not the

claims at issue in RAMCOR and Labat-Anderson. The violation at issue is the VA's

refusal to automatically extend Herrera's SDVOSB verification, and inclusion in the

VetBiz database, until December 27, 2012. The misconduct at issue is therefore not the

violation of a law in connection with a procurement itself, or the procurement process,

bur rather the preceding findings concerning a concern's ability to compete for such

procurements. Though eligibility is certainly a prerequisite to the award of such

contracts, that does not render a violation of the law governing the process by which an agency determines such eligibility a law that is "in connection" with a procurement within the meaning of 28 U.S.C. 1491. To the contrary, violations of the laws governing the eligibility of concerns to compete for, and be awarded, certain government contracts can occur separate and independent of any stage of the procurement process. Indeed, that is exactly the type of violation that occurred in this case. The VA's violation of 38 C.F.R. Part 74 first occurred in July of 2012, when Herrera requested that its verification be extended through December 27, 2012.   At that juncture, no part of the procurement process relating to either of the Contracts had occurred.

The misconduct at issue here – the VA's violation of 38 C.F.R. Part 74 – is the precise kind of conduct that has been found to be outside the ambit of the Court of Federal Claims, and within the jurisdiction of the District Courts. ATL, 735 F.2d 1343; CS-360, 94 Fed. Cl. 488; CS-360, 846 F.Supp.2d 171; accord Angelica Textile Services, Inc. v. U.S., 95 Fed.Cl. 208, 215 (2010) (finding the Court of Federal Claims had jurisdiction because the contested actions of the contracting officer are *manifestly part of a procurement process*) (emphasis added); Bona Fide Conglomerate, Inc. v. U.S., 96 Fed.Cl. 233, 240-41 (Fed.Cl. 2010) (Court of Federal claims likely has jurisdiction over matter concerning a challenge of an agency's award of a contract and the process leading up to that award because it concerned *a decision made as part of the procurement*) (emphasis added); see also Resource Conservation Group, LLC v. U.S., 597 F.3d 1238, 1245 (Fed. Cir 2010) ("1491(b)(1) in its entirety is exclusively concerned with procurement solicitations and contracts. Moreover, it is quite unlikely that Congress would have allowed the Court of Federal Claims to exercise jurisdiction in

nonprocurement bid protests in the case of a challenge to an award, proposed award, or solicitation…").

2.    <u>Sovereign Immunity Does Not Apply to Bar this Action</u>

In its brief, Defendant emphasizes the importance of "strictly construing" any statutory waivers of sovereign immunity. (Def. Br., pp. 23-24).    Presumably, the Defendant was attempting to argue that there was no such waiver of sovereign immunity in this case.  However, the Defendant's own brief belies the flaws in any such argument: Defendant admits that the Administrative Procedures Act ("APA") (pursuant to which Herrera has brought this action) waives the Unites States' sovereign immunity. (Def. Br., p. 12); <u>see also Bublitz v. Brownlee</u>, 309 F.Supp.2d 1, 6 (D.D.C. 2004) ("The APA waives sovereign immunity, allowing the United States to be sued in the district courts for remedies other than money damages arising from an agency's unlawful action"). Defendant nonetheless claims that the APA does not constitute a waiver of sovereign immunity in this case, because there are other adequate remedies in other courts.  (Def. Br., pp. 12-13).  Defendant's position on this topic is somewhat vague, as the government never states exactly what "other adequate remedy" exists with respect to the misconduct alleged in this case.    After several readings of Defendant's Brief, Herrera can only assume that the government's argument concerning "other adequate remedies" is premised on its flawed conclusions concerning the jurisdiction of the Court of Federal Claims.  (See Def. Br., pp. 12-15).  Indeed, Defendant sets forth no other "adequate remedy" and even fails to specifically identify what remedy might be available in the Court of Federal Claims.  This is, perhaps, because the Court of Federal Claims does not, as established above, have jurisdiction over this dispute.  Defendant's claims concerning

sovereign immunity are, therefore, wholly inaccurate.   Sovereign Immunity creates no

bar to the jurisdiction of this Court.

    3.    <u>Plaintiff has Established A Protectable Due Process Right</u>

In its brief, Defendant argues that Herrera failed to assert a protectable Due

Process right.   Defendant's argument is, again, premised on faulty reasoning and an

inability to distinguish the instant case from cases dealing with violations of law relating

to a procurement or the procurement process.

Defendant's Brief cites <u>C&E Services, Inc. of Washington v. District of Columbia</u>

<u>Water and Sewer</u>, 310 F.3d 197 (D. C. Cir. 2002) to support the proposition that Herrera

had no property interest in the Contracts.   (Def. Br., p. 18).   In that case, the court found

that a disappointed bidder had no property right in a contract, because protected property

interest arises only upon *award*.   <u>C&E Services</u>. 310 F.3d at 200.   While that may be true,

<u>C&E Services</u> has no bearing on whether Herrera has a property interest in <u>this</u> case.

Herrera did not claim that it was deprived of a right in relation to the *award of the*

*contract*, but rather, that it was deprived of its property interest *in its VA-approved*

*SDVOSB status and its inclusion in the VetBiz database*.   (<u>See</u> Complaint, ¶¶ 134-138 (citing

*Jordan v. United Insurance Company of America*, 289 F.2d 778 (D.C. Cir. 1961) ("[O]nce a going

business has established on the basis of a license or certificate of authority, property rights attach));

<u>see also</u> <u>CS-360</u>, 846 F.Supp.2d at 193.   Defendant does not dispute that Herrera had a

property interest in its SDVOSB verification or its inclusion in the VetBiz databse, and

indeed it cannot -- even the cases relied upon by Defendant held that the "procedural

protection of property is a safeguard of the security of interests that a person has already

acquired in specific benefits."   <u>C&E Services</u>. 310 F.3d at 200; <u>Board of Regents of State</u>

Colleges v. Roth, 408 U.S. 564, 576, (1972)  (as cited in Def. Br., p. 18); see also CS-360, 846 F.Supp.2d at 193. Herrera had previously been verfied and included in the VetBiz database.   The controlling case law dictates that Herrera's prior SDVOSB verification vested in Herrera a property right that could not be taken away without due process.   Because the VA failed to follow its own procedures concerning Herrera's SDVOSB verification and inclusion in the VetBiz databse, it deprived Herrera of the due process it was entitled to by law.

This Court has jurisdiction over Herrera's due process claims pursuant to 28 USC § 1331.  That statute provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.  Any argument to the contrary is wholly insupportable. [4]

**B.      Herrera Has Established the Requisite Elements for Injunctive Relief**

As previously briefed by both Herrera and the defendant, a plaintiff seeking injunctive relief must demonstrate four elements:  (1) substantial probability that it will prevail on the merits; (2) irreparable harm to it unless the injunction is granted; (3) absence of substantial harm to other interested parties or that the balance of equities tips in its favor; and (4) absence of harm to the public interest. E.g., TD Bank, N.A. v. Pearl, CIV.A. 12-01315 CKK, 2012 WL 4101946 (D.D.C. Sept. 19, 2012); Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.D.C. 2006).  The evidence presented for each of these criteria is balanced by the court on a sliding scale basis.  A much

---

[4] To the extent the Defendant argued that 28 U.S.C. § 1331 is insufficient to support jurisdiction because there was no waiver of sovereign immunity, this proposition is without a basis in the law.  As set forth above, Defendant itself has recognized that the APA waives sovereign immunity.  Herrera has brought its claims pursuant to the APA, which provides a mechanism by which the District Courts may review arbitrary and capricious, and/or illegal, actions perpetrated by government agencies.

stronger showing regarding one or more of the necessary factors lessens the amount of proof required for the remaining factors.   Washington Metropolitan Area Transit Authority v. Holiday Inn, 559 F.2d 841 (D.C. Cir. 1972).

No one factor is dispositive, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed.Cir. 1993).  As Defendant itself has recognized, of the four factors evaluated, the likelihood of success on the merits is the most important. (Def. Br., p. 10, citing Emily's List v. Federal Election Commission, 362 F. Supp. 2d 43 (D.D.C. 2005); Barton v. District of Colombia, 131 F.Supp.2d 236, 242 (D.D.C. 2001); Benton v. Kessler, 505 U.S. 1084, 1085 (1992)).  If and only if the movant is unable to establish that element should the Court emphasize the importance of the remaining factors. (Def. Br. pp. 10-11 (citing Emily's List, 362 F. Supp. 2d at 51-52; Davenport v. Int'l Board of Teamsters, 166 F.3d 356, 366 (D.C. Cir. 1999)).

Here, Herrera has firmly established that it is likely to succeed on the merits of its case.  Moreover, contrary to the claims in Defendant's Brief, Herrera has shown that it will suffer *irreparable* harm should this Court not issue the injunctive relief sought, and that this harm greatly outweighs any harm that might be suffered by other parties should the injunctive relief sought be issued.  Although Defendant argues that the balance of equities tips in its favor, it has failed to provide any rational – or indeed, even comprehensible basis – for such argument.

> 1.   Herrera Has Established A Likelihood of Success on the Merits of its Complaint

Defendant argues that Herrera has failed to establish that it is likely to succeed on the merits of its claims.  (Def. Br., pp. 12-18).  However, Defendant's conclusory

statements concerning the likelihood of Herrera's success are premised on arguments that have been successfully refuted above.   Specifically, Defendant argues that Herrera is unlikely to succeed because: (1) this Court lacks subject matter jurisdiction; and (2) Herrera failed to establish a protectable Due Process right. (Def. Br., pp. 12-18).   As set forth in detail above, neither of these contentions are correct.

Notably, nowhere in its Brief does Defendant argue that Herrera is unlikely to succeed because its allegations concerning the VA's conduct are incorrect.   Indeed, the Defendant does not refute that the VA made critical errors in relation to Herrera Corporation and Herrera Engineering's "profile" pages.   (See Def. Br., pp. 4-6).   Nor does the Defendant dispute that these errors led the VA to incorrectly identify the Company's verification date, or that this error caused the VA to incorrectly calculate the date to which Herrera's verification should have been extended pursuant to 38 C.F.R. 74. (See Def. Br., pp. 4-6).   Lastly, the Defendant does not refute Herrera's claim that it was *this* error, and resulting miscalculation, that resulted in Herrera being excluded from the VetBiz database, or that, if not for this error, Herrera would have been verified as a SDVOSB entity at the time the two contracts at issue in this case (the Contracts") were awarded.   In effect, Defendant has admitted that the allegations concerning the VA's misconduct, as set forth in the Complaint, are true.   As such, Herrera is likely to succeed on the merits of its Complaint.

The alleged errors made by Herrera with regard to its June 2012 re-verification submission do not have any bearing on the likelihood of Herrera's success.   Although Defendant puts much emphasis on the inadvertent errors made by Herrera in connection with its June 2012 re-verification package, Defendant fails to explain why any such

alleged mistakes are relevant. As explained in the Opening Brief the June 2012 re-verification submission should not have been reviewed by the VA at all; the VA should have, pursuant to 38 C.F.R. 74, *automatically* extended Herrera's verification status to December 27, 2012. The Defendant has not, and indeed cannot, dispute that the VA, as a result of its own factual error, acted improperly, arbitrarily and capriciously, and in contravention of law when refusing to do so. The pleadings thus far therefore demonstrate that Herrera is likely to succeed on the merits of its Complaint.

2.    Herrera Has Established That it Will Suffer Irreparable
      Harm if Injunctive Relief is not Issued

Defendant argues that Herrera has failed to establish that it will suffer irreparable harm if the injunctive relief sought is not issued. (Def. Br., pp 19-21). Defendant's entire argument on this point is premised on its contention that Herrera has failed to prove that it would suffer anything but "economic" harm. This contention wholly mischaracterizes Herrera's arguments to date. In accordance with the Court's November 14, 2012 order, Herrera submitted its Supplemental Brief, the *entirety* of which dealt with the catastrophic harm that Herrera would suffer should injunctive relief not be awarded. Specifically the Supplemental Brief (and the Sworn Affidavit submitted in support thereof) explained that Herrera's very existence would be threatened if this Court denied injunctive relief.

Defendant does not dispute that monetary loss that threatens the very existence of a concern's business constitutes irreparable harm sufficient to establish entitlement to injunctive relief. (See Supplemental Brief, pp. 1-3 (citing Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir 1985)). Nor does Defendant dispute that Herrera has alleged that its very existence would be threatened in the absence of the sought-after

injunctive relief.   To the contrary, Defendant acknowledges that Herrera has "claim[ed]" the type of legendary business harm that might qualify" for injunctive relief, but argues that such a showing is nonetheless insufficient because Herrera failed to provide the requisite "support" for such a claim.  (Def. Br., p. 19).  Defendant fails to explain, however, how the detailed affidavit submitted in connection with the Supplemental Brief fails to provide the necessary "support."  It is hard to imagine how this could be true, as the affidavit provides *precise* details concerning the specific reasons why, and the exact manner in which, the absence of injunctive relief would jeopardize Herrera's very existence.  Accordingly, it is clear that the Supplemental Brief and the affidavit submitted in support thereof provide *ample* support.  Defendant's contentions to the contrary are conclusory statements lacking any rational basis.  In short, Herrera has established that it will suffer irreparable harm.

> 3.    Herrera Has Established that the Balance of Equities Tips in its Favor

Defendant's final argument is that the balance of the equities tips in fits favor, and in favor of denying injunctive relief.  Specifically, Defendant argues that the public interest is better served by denying injunctive relief because Congress contemplated that the Court of Federal Claims should have exclusive jurisdiction over the types of claims asserted by Herrera in this case.  (Def. Br., pp. 21-22).   This argument is utterly nonsensical.   As a threshold matter, as set forth in detail above, the government is incorrect in asserting that the Court of Federal Claims had exclusive jurisdiction over this type of matter.  However, even if this assertion was accurate, it does not follow that Congress intended to prohibit all injunctive relief in this type of case, or that the issuance of injunctive relief runs contrary to the public interest.  To the contrary, the Court of

Federal Claims is vested, in relation to those matters over which it has jurisdiction, with the power to issue injunctive relief.   Indeed, *which* court has jurisdiction over a case seeking injunctive relief is a question wholly unrelated to determining whether injunctive relief is proper in and of itself.  Both such determinations are separate and apart from the questions of what affects the public interest, and whether the issuance of injunctive relief would negatively or positively impact the public interest.  Thus, Defendant's argument concerning the public interest fails to establish that the balance of equities tips in favor of denying injunctive relief in this case.

Defendant's other arguments on this topic are equally unavailing.  Defendant claims that the balance of equities tips in its favor because the VA is vested with discretion concerning a concern's SDVOSB eligibility and its inclusion in the VetBiz databae.  (Def. Br., pp. 20-21).  As are so many aspects of Defendant's opposition, the Defendant's argument on this point is incomprehensible.  Defendant wholly fails to explain how the fact that the VA (supposedly) has discretion over SDVOSB eligibility and inclusion in the VetBiz database has *any* bearing whatsoever on the factors considered when determining whether injunctive relief is proper.  Nowhere in its brief does the government explain why the issuance of the injunctive relief sought in this case would negatively impact the VA (thus tipping the balance of equities in its favor), or how any such alleged negative impact stems from the fact that the VA has "discretion" over a concern's SDVOSB verification.   Moreover, the contentions underlying the government's nonsensical arguments – i.e that the VA has unfettered discretion over SDVOSB eligibility and inclusion in the VetBiz database, and that there is no standard by

which the Court can assess the VA's decisions concerning Herrera's eligibility and inclusion in the VetBiz database – are factually inaccurate.

The VA's (or more specifically the CVE's) determinations with respect to SDVOSB eligibility and inclusion in the VetBiz database are governed by a very specific set of regulations. Specifically, under 38 C.F.R. § 74.22, if the CVE believes that a participant's SDVOSB verified status should be cancelled, CVE will notify the participant in writing. 38 C.F.R. § 74.22(a). The Notice of Proposed Cancellation Letter will set forth the specific facts and reasons for CVE's findings, and will notify the participant that it has 30 days from the date it receives the letter to submit a written response to CVE explaining why the proposed ground(s) should not justify cancellation. 38 C.F.R. § 74.22(a). Following the 30-day response period, the Director of CVE, will consider any information submitted by the participant. 38 C.F.R. § 74.22(b). Upon determining that cancellation is not warranted, CVE will notify the participant in writing. If cancellation appears warranted, the Director of CVE will make a decision whether to cancel the participant's verified status. 38 C.F.R. § 74.22(b). If, after determining, upon review of the response permitted to the participant, that cancellation is warranted, the CVE is required to give the participant *further* notice: "[u]pon deciding that cancellation is warranted, CVE will issue a Notice of Verified Status Cancellation. The Notice will set forth the specific facts and reasons for the decision, and will advise the concern that it may re-apply after it has met all eligibility criteria." 38 C.F.R. § 74.22(c). Although the participant's SDVOSB status, and inclusion in the VetBiz database, is suspended upon the Notice outlined in 38 C.F.R. § 74.22(c), the participant is given a further right to appeal. 38 C.F.R. § 74.22(d). Within 30 days of receipt of CVE's cancellation decision,

a participant may file an appeal with the OSDBU concerning the Notice of Verified Status Cancellation. 38 C.F.R. § 74.22(d).

Here, the VA failed to follow this procedure.   Rather, it arbitrarily and capriciously determined that Herrera was no longer eligible for participation in the database, and refused to extend its verification status to December 27, 2012, in contravention of 38 C.F.R. Part 74.   This misconduct is exactly the type of arbitrary and capricious agency behavior reviewable pursuant to the APA.

In short, therefore, Defendant has failed to establish that any party would be harmed by the issuance of injunctive relief, and therefore has failed to provide this Court with any basis upon which it could conclude that the balance of equities tips in favor of the Defendant, and in favor of denying the injunctive relief sought by Herrera.

## IV.   CONCLUSION

For the reasons set forth above, Herrera respectfully requests that its application for temporary restraining order, and motion for preliminary injunction be granted, that the Court enter an order in the attached proposed form, and that the Court grant such other relief as it deems appropriate.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November 2012, a copy of the foregoing

was served on the following by using the Court's Electronic Filing system:

Oliver W. McDaniel
Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20530


_____/s/Robert J. Symon___
Robert J. Symon